﻿Citation Nr: 18106785
Decision Date: 05/31/18 Archive Date: 05/31/18

DOCKET NO. 12-35 371
DATE: May 31, 2018

ORDER
Entitlement to service connection for an acquired psychiatric disorder, variously diagnosed as schizophrenia undifferentiated type, major depressive disorder, and bipolar disorder, is granted.
REMANDED
Entitlement to service connection for a shoulder condition is remanded.
Entitlement to service connection for residuals of a back injury is remanded.
Entitlement to service connection for bilateral hearing loss is remanded.
Entitlement to service connection for a disability manifested by earaches is remanded.
Entitlement to service connection for tinnitus is remanded.
Entitlement to service connection for headaches is remanded.
FINDING OF FACT
The Veteran’s acquired psychiatric condition is related to his in-service injury. 
CONCLUSION OF LAW
The criteria for service connection for an acquired psychiatric condition are met. 38 U.S.C. §§ 1110, 1111, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a). 

REASONS AND BASES FOR FINDING AND CONCLUSION
The Veteran served on active duty from October 1980 to February 1981, and has a period of active duty for training (ACDUTRA) from August 1983 to November 1983.
This appeal comes before the Board of Veterans’ Appeals (Board) from a December 2009 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO) in San Juan, Puerto Rico. 
Entitlement to service connection for an acquired psychiatric condition.
The Veteran contends that service connection for an acquired psychiatric condition is warranted. More specifically, the Veteran contends that his psychiatric condition is a result of head trauma and pain associated with in-service injuries. 
A May 1988 letter, authored by a case manager, reveals that the Veteran was admitted to a psychiatric center on August 1987 and was transferred to another facility on September 1987. 
Treatment records, dated from October 1988 to March 1992, reveal complaints of sadness and depression.
A treatment note dated in July 1989, authored by Dr. J.N., reveals that the Veteran had received psychiatric treatment dating back to November 1988 until the present. The note also reveals that the Veteran had been prescribed medication and was attending monthly psychotherapy. 
The Veteran had two inpatient hospitalizations in November 1990 and December 1991.
An April 2009 outpatient record described that the Veteran felt depressed, sad, and had problems with anxiety and trouble sleeping.
In a December 2009 neurological evaluation, it was noted that the Veteran developed severe depression due to manifestation of symptoms resulting from his in-service incident. During this visit, the Veteran was also prescribed oral medication for psychiatric purposes.
A September 2011 letter, authored by psychiatrist, Dr. J.N., describes the presence of psychiatric symptoms, carrying a diagnosis of major depressive disorder and mentioning that the Veteran had previously been diagnosed with bipolar disorder, type I and schizophrenia. The psychiatrist also attributed the development of the Veteran’s psychiatric problems to his in-service injuries.
In an August 2013 letter, authored by neurologist, Dr. A., stated that the Veteran’s major depression was a chronic problem that presented since 1982, while he was still on active duty. The neurologist further cited that the Veteran’s problems had worsened. 
The Veteran submitted a December 2015 private medical report, authored by a board-certified psychiatrist, Dr. A.I. The examiner noted that the Veteran suffered an in-service accident in August 1983, in which a tent pole hit him in the head and a guardsman fell on him, injuring his back and causing a head injury. The examiner diagnosed the Veteran, under the DSM V, with schizophrenia, undifferentiated type, as reflected in the notes of Dr. J.N.; bipolar disorder; and major depressive disorder. Additionally, the examiner opined that the Veteran’s depression was associated with his documented head trauma which occurred in August 1983. By way of rationale, the examiner based his opinion upon current scientific knowledge of events with the Veteran after he was hit with an object, with significant force to his head, causing him to be knocked out momentarily. The examiner also cited to various articles and journals which supported his assertion that a brain injury, even if mild in nature, can lead to a delayed onset of mental health problems, to specifically include depression. 
Given the positive private opinion stated above, the Board finds that the claim of entitlement to service connection for an acquired psychiatric disorder variously diagnosed is granted. 
REASONS FOR REMAND
1. Entitlement to service connection for a shoulder condition is remanded.
The Veteran contends that service connection is warranted for a shoulder condition. 
An August 2008 treatment note reveals that the Veteran was evaluated for possible neuropathy. Motor nerve and sensory nerve conduction studies were performed on the bilateral median and ulnar nerves. As to the motor nerves, onset latencies were mildly prolonged in both median nerves with preserved conduction velocities but mildly reduced amplitudes. Sensory studies show no response in the right median nerve and a slowed response with a prolonged latency in the left median nerve. Impressions revealed moderate right and mild left carpal tunnel syndrome, with a notation that a clinical correlation was required. 
A March 2009 treatment note reveals that the Veteran complained of pain radiating from his neck down his left arm and noted that the pain was worse when he turns his head. The Veteran was subsequently diagnosed with cervical radiculopathy and degenerative disc disease. An x-ray of the left shoulder was normal with no findings of fracture, dislocation, lesion, or arthritis. 
The Board cannot make a fully-informed decision on the issue of a shoulder condition because no VA examiner has opined whether the Veteran’s condition is causally related to his active service or any incident therein. 

 
2. Entitlement to service connection for residuals of a back injury is remanded.
The Veteran contends that service connection is warranted for residuals of a back injury. More specifically, the Veteran contends that he injured his back in service and that his current symptoms are related to that incident.
The Veteran’s entrance examination, dated in July 1980, includes notations related to a preexisting lower back problem. Therefore, the presumption of soundness does not apply.
A subsequent service treatment record, dated in August 1983, reveals that during field training exercises, the Veteran was struck on the head and in the back by a medium tent pole and that a serviceperson then fell onto his back. Following the incident, the Veteran was treated and released.
In August 2008, the Veteran was diagnosed with lumbar discogenic disease.
The Veteran was afforded a VA examination in December 2009. The examiner opined that the Veteran’s currently diagnosed back condition was less likely than not considered an aggravation or was directly related to military service. By way of rationale, the examiner noted that the Veteran’s service treatment records and VA Medical Center records are silent toward any treatment, imaging, or evaluation due to low back pain until 2008, nearly 25 years after the in-service low back injury. The examiner also cited to the August 2008 diagnosis, but noted that the Veteran’s current back condition was unrelated to the in-service injury as the incident in service was acute and transitory. 
The Board cannot make a fully-informed decision on the issue of residuals of a back injury because no VA examiner has opined and considered the possibility of delayed onset of symptoms as due to the in-service back injury and whether the back injury was aggravated by service. 
 
3. Entitlement to service connection for bilateral hearing loss is remanded.
The Veteran contends that service connection is warranted for bilateral hearing loss.
The Veteran’s entrance examination is silent as to any hearing loss, and there is no separation examination available for review. 
An October 2006 private treatment record reveals that the Veteran has been treated for an unspecified ear condition. 
A September 2011 audiological evaluation report reveals a notation of hearing loss. Upon examination, it was reported that the Veteran had sensory neural hearing loss from slight to moderate with excellent hearing discrimination in the right ear and slight sensory neural hearing loss with excellent hearing discrimination in the left ear. 
The Board cannot make a fully-informed decision on the issue of bilateral hearing loss because no VA examiner has opined whether the Veteran’s hearing loss had its onset during service or is otherwise related to service. 
4. Entitlement to service connection for a disability manifested by earaches is remanded.
The Veteran contends that service connection is warranted for a disability manifested by earaches.
The Veteran’s entrance examination is silent as to any hearing loss, and there is no separation examination available for review. 
An October 2006 private treatment record reveals that the Veteran has been treated for an unspecified ear condition. 
The Board cannot make a fully-informed decision on the issue of a disability manifested by earaches because no VA examiner has opined whether the Veteran’s claimed disability manifested by earaches had its onset during service or is otherwise related to service. 
5. Entitlement to service connection for tinnitus is remanded.
The Veteran contends that service connection is warranted for a disability manifested by earaches.
The Veteran’s military occupational specialty is listed as a dental specialist. The Veteran’s DD Form 214 also reflects having earned an Expert Qualification Badge as a rifleman. 
The Veteran’s entrance examination is silent as to any hearing loss, and there is no separation examination available for review. 
An October 2006 private treatment record reveals that the Veteran has been treated for an unspecified ear condition. 
The Board cannot make a fully-informed decision on the issue of tinnitus because no VA examiner has opined whether the Veteran’s claimed tinnitus had its onset during service or is otherwise related to service. 
6. Entitlement to service connection for headaches is remanded.
The Veteran contends that service connection is warranted for headaches. More specifically, the Veteran contends that his headaches began as a result of being hit in the head with a “piece of tree log” and reported that he was knocked out momentarily. 
An examiner, in a December 2008 treatment note, reveals that the Veteran has been treated for headaches from October 2000 to January 2006.
The Veteran was afforded a VA examination in December 2009, at which time the Veteran was diagnosed with headaches. At the time of the examination, the Veteran reported that he has suffered headaches ever since the initial head trauma. He described that he previously suffered from mild, occasional headaches, and described that his headaches have worsened in severity in the last three to four years. He also described the headache as oppressive in the back of the head and occurring mostly at night for most days. The Veteran also noted that he takes oral medication, which has improved his condition. The examiner opined that the Veteran’s headaches were less likely than not a result of military service. By way of rationale, the examiner noted that the Veteran while the Veteran had evidence of an in-service head injury, there were no complaints on file of headaches from that date until the mention of his condition by his general practitioner in December 2008. The examiner also noted that due to the significant gap in time, exceeding 20 years, he was unable to relate the present condition of headaches to the head injury sustained in active service or attribute the current condition to aggravation. 
The Board cannot make a fully-informed decision on the issue of headaches because no VA examiner has opined and considered the possibility of delayed onset of symptoms as due to the in-service head injury. 
The matters are REMANDED for the following action:
1. Ask the Veteran to complete a VA Form 21-4142 for records from approximately the year 1982 onward for the following facilities: Jamaica Hospital in Jamaica, New York; Queens Hospital in Jamaica, New York; Brooklyn Hospital in Brooklyn, New York; Kings County Hospital in Brooklyn New York; Woodhall Hospital in Flushing, New York; Wycoff Hospital in Brooklyn, New York; and Greenpoint Hospital in Brooklyn, New York. Make two requests for the authorized records from each of the facilities listed above, unless it is clear after the first request that a second request would be futile. 
2. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any residuals of a back injury. The examiner must opine whether it was at least as likely as not that the residuals of the Veteran’s back injury were aggravated (non-temporary increase in severity) by service and, if so, whether any increase in severity was clearly and unmistakably (undebatable) due to its natural progress. 
3. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of his headaches. The examiner must opine whether it is at least as likely as not related to an in-service injury, event, or disease, to include the August 1983 incident involving a head injury. 
4. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any ear disability, to include bilateral hearing loss, tinnitus, and a disability manifested by earaches. On examination, the examiner should identify whether there is a current diagnosis of an ear disability. Then, the examiner must opine whether it is at least as likely as not that the ear disability(ies) is/are related to an in-service injury, event, or disease. 
(Continued on the next page)
 
5. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any disability of the shoulder. The examiner must opine whether it is at least as likely as not related to an in-service injury, event, or disease, to include the 1983 incident. 

 
DEBORAH W. SINGLETON
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Tiffany N. Hanson, Associate Counsel